This is a real cloud. Is it something you ship? No, I hope not. It's just a VA cloud. That's good. Next case is Thomas Industries v. Gast Manufacturing, Co., 05-1472. Mr. Jurek, is it? Yes. When you're ready. Good morning, Your Honors. May it please the Court. Counsel. In this appeal, Thomas asks and invokes only what this Court has often called bedrock rules of claims construction. When the claims are interpreted properly in accordance with the understanding of a person of ordinary skill in the relevant art, and are not strictly limited to the preferred embodiment in the patent, Thomas respectfully submits that the judgment of the District Court finding non-infringement must be reversed. As always, the claim language itself governs the meaning of claims, and therefore any analysis involving claims construction must start with the claim language itself. Claim 1 of the 521 patent is the only independent claim in the patent, and that claim is in what's called a Jepson format. But, Mr. Jurek, you know we have to resort to the specification to understand the whole patent, including the claims, and you mentioned the preferred embodiment, and of course the description, the detailed description, reads description of the preferred embodiment, but is there any other embodiment? There are many other embodiments. If you look at the specific invention claimed here, there really is only one embodiment, because the invention really focuses on the way that the tubes are joined to the side walls or the chambers that create the inlet and exhaust areas in the patent. There are no other embodiments of that. There are other embodiments of compressors that are covered within the scope of this patent. I think that the patent makes very clear when it starts off using the Jepson format that it was intended to paw into the claim all prior art twin cylinder compressors. And when you look at that particular claim language in the preamble, there really isn't any limitation on what that prior art twin cylinder compressor is, except to suggest to the person of ordinary skill in the art that we're talking about the compressors that you well know, which are compressors where there are separate tubes that are assembled, press fit into the chambers, and therefore you have the problems of leakage or misalignment and the other grave problems that the prior art presented. The preamble does not report to limit the claim to the preferred embodiment. The preamble does not report to, in fact, describe every part of the compressor. A person of ordinary skill in the art readily understands that in addition to the parts that are set forth as the prior art compressors here, there are valves and valve plates and gaskets and springs. There's a whole host of things that are not covered within the specific preamble here, and that's because the person of ordinary skill in the art, who we interpret the claims through, fully understood, readily understood what all those prior art structures were. Now we're talking about one single head. I'm sorry? One single head. One single? Head. Head. We're talking about a head, a monolithically formed head, which has the tubes that are formed together. And the accused doesn't have a single head. It does. It clearly does, Your Honor. With covers over it, as you see it. Well, they call covers a head. No, I understand. You call them covers. I call them covers. And that's what the prior art calls them. And the patent examiner had before him 20 examples of prior art compressors, and it showed compressors that had covers with the exact structure of this patent that had separate tubes, and it had some of the compressors that had monolithically formed covers on top. What do you make of the language in the abstract, the last sentence of the abstract, which refers to the one-piece cylinder head serving as the final retention member? Yes, Your Honor. Retention member means it holds it together. The covers have no effect upon whether something's a final retention member. When you have the single-formed sidewalls of the chambers with the tube, that's the final retention member as this patent describes. It locks things in place. And, in fact, the feature of this patent that was not in controversy eliminates the need to have bolts that go through the housings to hold the housings to the motor because it's that rigid formation of those tubes that join in one piece with the inlet and exhaust chambers that is the final retention member. And how would the covers be attached? They'd be bolted on top. So they wouldn't use bolts. They would use bolts. Pardon me? Well, it strikes me as I listen to you describe what the invention is, something that can be put together without the need for bolts and complete the assembly, it strikes me that that seems to exclude a bolted-on set of covers. Well, there's two different aspects of the invention, Your Honor. One is the monolithically formed head, which relates to the chambers that are formed in one piece. Prior, our problem here that was solved was those tubes would come apart and would cause leakage. People would grab them because they looked like handles. And the whole focus of the file history on the patent is to solve that problem. And so the whole focus of the claim is to talk about the specific structure where those tubes join the walls. That's one embodiment. The other embodiment, which is not involved in this case, is because you have a solid structure going across the top, you don't have to bolt from the side. You still have to bolt down. I mean, the preferred embodiment describes very clearly that you still have to have bolts coming down to put whatever is on top of the compression cylinder fastened to the bottom. So it's not eliminating bolts entirely. Bolts are well recognized as being necessary in the context of all compressors. Well, you still have the four bolts per head. Yes, Your Honor. Isn't it? What I'm confused about is the fact that in the abstract, you talk about the one-piece cylinder head member includes integral tubes connecting the heads. Now, which is it? Is it a single head or is it heads? Well, that's one of the issues that came up in the context of the prosecution of the patent. The original application was drafted referring to what this patent calls a head member as the head, and it called the one-piece structure, the monolithic structure, a head member. In discussions with the examiner, they then went to the approach of calling the individual heads a head member and the resulting monolithic structure the monolithic head. So the abstract is really talking about a monolithic head as a single piece with two members, one on each of the cylinders. Well, the head portions, though, as identified in the drawing, at least in Figure 1, you have head portion 62, which are two separate head portions, and then there's a head member 63. That's correct. And in the description of this patent, the head member would be called a monolith. The patent claim would refer to 63 as a monolithic head. That's the monolithic head. And the head members would be the 62s in the preferred embodiment. The portion, then, of the description at Column 3, lines 60 through 64, they talk about the valve plate 54 also includes an upper O-ring typical seal that seals the bottom surface of the head portion 62 of a head member 63. Now, the head portion 62 there is still talking about a singular head. It's talking about a head portion of a head member. Yes, Your Honor. So 62, we're still talking about two head portions. Yes, Your Honor. So are those the head members that are referred to in the claim? That's what the head members are in the claim. And, again, this is a preferred embodiment describing, as a patent says, one embodiment of the invention, which, of course, establishes the best mode and the enablement requirements. If we only have one embodiment in the description, in the invention, is that limited? No, Your Honor. In fact, this court has been very clear on numerous occasions that the fact that there is only one embodiment is not a limitation in and of itself. All you have to have is one embodiment. And there are many cases in this court which has addressed the issue of patent specifications that describe only one embodiment. It is very clear that the fact that you have only one embodiment is not a limitation. The case of this court, including the most recent Playtex case, which I believe Your Honor has been involved in, says very clearly that you will limit the claims of preferred embodiment only by express declaration of a patentee. Here, there is absolutely no express declaration of a patentee anywhere in the patent itself or in the file history which suggests any limitation of the structure of the invention to this one specific preferred embodiment. Since this is a Jepson claim that we're talking about, the preamble shows that a pair of head members, each head member being fastened with a different one of the cylinders, multiple head members were part of the prior art. That's correct. In prior art, they were called separate heads, basically. So the only real change that's made, the improvement, is a monolithically formed head, isn't it? The only change is to take the two tubes that were loose and separate and make them out of a single piece. It had nothing to do with how the chambers are closed on either the top or the cover or the bottom of the valve plate. Well, the cover could also be considered a separate head, though, couldn't it? Well, not in the prior art. I mean, we've put in evidence, intrinsic evidence, that showed that even Gass, the appellee here, called the cover a cover and the part that formed the chambers was called a head. We put in their product brochures, and again, we're looking at the time of the invention, not subsequent. At the time of the invention, they had patents, which are in the record, that shows a structure almost identical to the structure here where they have a valve plate that's built up to form chambers and a cover on top, and in those patents, they uniformly refer to the structure that forms the chambers as the head, and whatever closes it off is a cover. They've had products in the marketplace 20 years before, 15 years at least, before this invention came about called DOA MOA products, and they have exploded parts diagrams which show that exact structure of an open chamber as being a head. They have exploded parts diagrams called the cover the cover. In the prior art that was shown to the patent examiner during the prosecution of the patent, there were products such as a Toshiba twin-cylinder compressor which had bolted-on covers to the same type of monolithically formed valve plate and chamber. But the cover acts as a head, though, doesn't it? No. A separate cover? Not in the context of what the person of ordinary skill in the art understands the head to be. It would be a head only if you adopt the district court's construction that says a head is always the topmost or the uppermost part of a compressor, but that's not what the person of ordinary skill in the art understood it to be. It's not even an ordinary definition that necessarily applies in every situation. What's the head of a class? What's the head of a table? Who's the head of this panel? But without the cover, you wouldn't get any compression. Without the cover, the product would not work. That's exactly right. Without the cover, it would not work. So is the cover the head? Well, no. The head is defined as a combustion chamber. But is the cover the head in that particular situation? The cover completes on top the chambers. So without the cover or the head, there would be no compression within the cylinder housing. And without a valve plate on the bottom, there would be no compression either. It has to be, and it's pretty clear the evidence is unequivocal on this, there must be closure on all four sides. In a preferred embodiment, it chooses a simple design option of having a bottom cover, which it calls a valve plate, to close off a three-sided structure. The product in question here uses a reverse structure. It uses a top cover as opposed to the bottom cover, using an open box from the bottom on which it just puts a cover. But there's no doubt that the person of ordinary skill in the art, and that's a key point, readily understood that you've got to close the top and you've got to close the bottom. And how you do it is simply a matter of design choice. And that's why this particular patent used a Jepson format, because it wanted to invoke all those prior art structures, whether a top cover or a bottom cover, and to focus the improvement, focus the invention, solely on the way that the tubes join the chambers. Mr. Jurek, notwithstanding your uncertainty who the head of this panel is. I have no uncertainty, Your Honor. It's my duty to tell you you've used up most of your rebuttal time, which you can continue to do or to save, as you wish. I will reserve. Thank you, Your Honor. All right. Mr. Callahan. Your Honor. May it please the Court. This Court should affirm the district court's ruling of no literal infringement. The record is clear on what the structure is. There are no disputes on the structure of the accused product, nor are there any real disputes about what is disclosed in the intrinsic record and, by contrast, what is not disclosed in the intrinsic record. The district court correctly interpreted the term that is at issue before this Court, monolithically formed head. What is the difference between the head and the cover? In the context of this patent, Your Honor? No, generically. I'm not sure that you can say generically, Your Honor. I think the term cover is used in a wide variety of contexts as the term head is used in a wide variety of contexts. And in the same way that you need to know the context of this Court to know who is the head of the panel, you need to read the context of the patent and the intrinsic evidence in the prosecution history. Well, being somewhat familiar with car engines, you have a cover to cover the valves, right? That's right, Your Honor. And then you have a head below it. That's correct. The head creates a compression within the engine. Now, is the cover of the alleged infringing device a head or a cover? Well, it is a head in the context in which it is used in this patent, Your Honor. And I think the best place to look for that in the patent, there are some good descriptions, but the one that I think is the best is on A61 at the record, column 4, lines 57 and 58, where the specification says, talking about the overall assembly, and the specification says that the assembly is complete by joining the two housings, 14A and 14B, that's what's underneath, with the one-piece head, 63, that one of the members of the panel asked about initially. So when you take that one piece, and now we know in the claim terms the way that term has been described, as monolithically formed, and the patentee expressly disclaimed any kind of head that could be put together from multiple pieces, whether bolted, welded, or otherwise fixed together, the patentee said when you take this monolithically formed head and you place it on top or you join it with the housings, the assembly is complete. And I think that is probably the best... What does the term assembly there refer to? The overall assembly of the pump, Your Honor. Well, 14, if I understand it correctly, would not refer to the entire pump, right? 14A and 14B are not referencing the entire pump, just the top area, right? Well, it's actually, if you look, Your Honor, in perhaps figure 2 or figure 1, perhaps figures 12 and 13 are the best examples of that. So we've got some things that are sitting on top of this motor, and that's the assembly that we're going to put on top. That assembly is complete when you put that monolithically formed head on top. Well, let me explain what my concern was. If you look at figure 2, 10, for example, is not part of 14, correct? That's accurate, Your Honor. Right. So it's not... When you say the statement that the assembly is complete by joining the two housings with the head, that's not really saying that all you need to make the pump is to join the two 14s with the 63. I agree with that, Your Honor. So we're talking about a subset of all the parts that are necessary for the complete assembly of the pump. That's accurate. So it seems to me to that extent we don't necessarily conclude from that sentence that the covers must have... Some other potential parts, such as a cover, must have been encompassed within that sentence, do you think? Well, I think, Your Honor, that for that assembly to be called complete, you must not need to add anything else to the head. Well, but what do you mean when you say that assembly? You mean the whole pump? No, Your Honor. No, because the 10 is still missing. I think as the pump is formed, Your Honor, it's formed by putting those sort of constituent parts down and then putting subsequent parts on top of them. As you can see in Figure 1, it is clear that the monolithically formed head 64, when you put that on, you are finished. That is not to say that there haven't been a number of earlier preliminary steps that you've taken. That is not to say, as counsel correctly says, that this patent describes each and every wire, screw, etc., that might go into this pump. It is only to say that the monolithically formed head, when you've got that on top, you are done. No more things need to be placed on top. Well, I understand what you're saying, but it seems to me that you could have, for example, you could say exactly the same thing in a situation in which what you did first was to screw the covers onto the head and then put the head on top of the rest of the machine and then you say you're done. I would not disagree with you, Your Honor, except that is the very thing that the patent office was concerned about with the use of the term integral or one piece. The patent office said, I'm concerned, we're concerned that if we give you that claim language, integral or one piece, then this last thing you will put on, this one piece head to complete the assembly. I think you're assuming your conclusion because in order for that to be the right reading of what happened in the patent office, you have to assume that it covers a part of the head. I don't believe so, Your Honor. Because otherwise, what went on in the patent office was a disagreement about whether integral and one piece head somehow could avoid the point of its being monolithic and they settled on the word monolithic, but I don't think that answers the question of whether the covers a part of the head. I think, Your Honor, respectfully, that the issue of monolithically formed and the statement that was made at the same time, we are using the term monolithically formed so as to disclose or so as to disclaim any construction that would be formed of multiple pieces put together, as Your Honor says. Sure, but the catch is, multiple pieces of what? Is it multiple pieces of the segment that is there beneath the covers, or is it multiple pieces of something that incorporates the covers? It's whatever it is that completes that assembly as stated in column 4, whatever that 64 as it's described in the patent is must be monolithic and formed of a single piece. I think equally important, Your Honors, as to what is disclosed, and we've talked about some of the things that are disclosed in the patent, is what is not disclosed. This is not a situation where we are asking for the district court rule that the claim term monolithically formed head was limited to the sole disclosed embodiment. One can imagine many monolithic structures, monolithic heads, other than the one that is disclosed in the patent, and the claims as interpreted would be broad enough to include a variety of monolithically formed structures. So we're not saying that if it doesn't look like figure 1, it isn't a monolithically formed head. There may be a bunch of things that look much different than figure 1 that are still a monolithically formed head. There is nothing shown in the patent in the drawings. There is nothing written in the patent in the specification or the claims. There is nothing in the prosecution history that suggests a multiple-piece head or a head member that is formed of multiple pieces. Indeed, as I mentioned, the prosecution history expressly and explicitly disclaims that type of a construction. And consistent with that... But once again, Mr. Callahan, is it really the way we would describe the cover? If the cover is part of the head, then it could be the same as the claim itself, monolithic? Monolithic, you're saying it has to be one piece. That's correct. But does it really have to be one piece if you have the covers, which are two pieces, they're separate, but at the same time they form one piece when attached?  That is the entire distinction, Your Honor, between one piece being something that is multiple pieces to start with, but we either screw them together, weld them together, or some other way fix those things together before using them in the assembly, and monolithic, which says formed out of a single piece of metal. That is not, we have part A, part B, part C, and we screw them all together, we weld them all together, glue them all together, and then call that monolithic. The term monolithic was used to distinguish between the type of construction in which you were fascinating. Assembling. One or more pieces together. That's correct. So is that the only distinction, then, between the two? I think that is the distinction between the two on which the patent office relied, and that is reflected, Your Honor, in the public record on which the public and competitors are entitled to rely in this case. So I think I agree with the way Your Honor's phrased it. There is no dispute that under the district court's interpretation, which we believe for the reasons I've stated is correct, there is no dispute that the accused product does not literally infringe. As to the issue of infringement under the doctrine of equivalence, the district court found no genuine issue of material fact that would allow a reasonable juror to find that what we view as specifically displaying multiple piece structure is insubstantially different from the monolithic structure. As an initial matter, the district court, although her opinion mentions FESTO, we would concede that the district court did not undertake a legal FESTO analysis. This court can do that, and we believe this court ought to do that to preclude application of the doctrine of equivalence in the first instance. This is, we believe, the classic case of FESTO. Was the claim term added? Yes, it was, monolithically formed head. Was it added for a reason related to patentability? Absolutely. The patent office refused on multiple occasions to grant a patent to Thomas until it added that claim term. Do I understand correctly that you raised FESTO when your opposing counsel responded? We did raise the issue of FESTO below, Your Honor. But, as I said, the district court did not go through that analysis. Right, but what you're asking to do is for us to affirm on a theory not adopted by the district court, which is okay as long as it's been raised and litigated in the lower court as opposed to something that's raised for the first time here. And it was raised and litigated before in the lower court, Your Honor, and that is precisely what we're asking you to do. So we believe that, as an initial matter, we ought not to consider doctrine of equivalence because there is an absolute bar under FESTO. The FESTO case was not cited by the appellants in their opening brief, nor was the FESTO case cited by the appellants in their reply brief. So I'm not sure there's even a serious dispute about that. Well, it's not surprising it wasn't cited in the opening brief because it wasn't part of the judgment that they were challenging. That's accurate, Your Honor.  But it was not cited in the reply brief after we went through and explained why we believe FESTO does provide an absolute bar. We also believe the judge's opinion is correct in stating that no reasonable juror, in light of what took place at the patent office, could conclude that the differences between the multiple-piece assembly of the accused product and the claim monolithically formed head were insubstantial. That would give right back to Thomas the very thing that it gave up in order to get the claims in the first instance. Now, the district court mentions both the function away result and the insubstantial differences tests, does not go through a detailed analysis of those, although the issue was briefed in detail below. But what the district court did do was look at Thomas Agast's subsequently issued patent on the accused design. And although conceding as a matter of law that that issue is not dispositive but has some way to be accorded to it, used that as an example or as a vehicle to play out the insubstantiality test, concluding that no reasonable jury could, for many of the same reasons, that the same examiner that allowed the patent that's at issue here also allowed the subsequent gas patent for the same reasons, concluding that those differences were not insubstantial. Thank you very much, Your Honor. Thank you, Mr. Callahan. Mr. Jurek has a little time left. Just briefly, Your Honor, I want to address three issues. First, I believe that it's more important to look at the background of the invention and general descriptions of the invention than to descriptions of a preferred embodiment in trying to understand the invention. And I think the case law is very clear that's also the appropriate vehicle to doing so. The background of the invention very clearly describes the head as that portion that has the inlet and the exhaust chambers and that's at Column 1 beginning at Line 30. Second of all, Your Honor, Judge Bryson, you referred to the discussion at Column 4 regarding the assembly is complete by joining the two housings, 14a and 14b. All right. If you look up to the beginning of that discussion, it begins really at about Line, I think that's 18, where it's describing the manner of assembling a boltless compressor. It's illustrated in Figures 12 through 17. And that's a description of a feature we're not even talking about in this case. It's not relating to, you know, how you work with a monolithic head. It's simply talking about how you can avoid putting bolts from the housings into the motor. And this clearly is not a final piece because it doesn't talk about putting a valve plate on, putting valves on. It misses a whole bunch of things that would be necessary to complete the final structure. It simply is describing how you make this without putting bolts through the motor to hold the housings on. And finally, under the doctrine of equivalence, Your Honor, we did address Festo in reply. Their arguments based upon Festo are the same arguments they made on claimed construction, which is based upon simply not properly reading what happened in the patent office. All the language about this one piece of monolithic had to do with the separate tubes, the tubes being separate from those chambers. It had nothing to do with the covers on top. But the problem, it seems to me, with the DOE argument is that if they're right about literal infringement and, therefore, for purposes of claimed construction and literal infringement, the head includes the covers, in effect, then it's hard to say that you haven't given up the equivalence argument. No, I think that's not correct, Your Honor. It may be difficult, but it's not that difficult in this case. It was well known in the art that you can put a separate cover on. We've shown that in the evidence of record. And that's an insubstantial variation. It's a well-known design. But that doesn't address the question of whether Festo applies. You mean you're saying... Well, go ahead. No, what I'm saying, Your Honor, is Festo itself says that, and I'll quote, it says, one of the ways to rebut the presumption is by showing the rationale underlying the amendment. There is no more than a tangential relation to the equivalent in question. Well, the reasons for the amendment here were all talking about joining separate tubes with these separate chambers. It had no relation, let alone a tangential relation, to the covers. It had absolutely nothing to do with the covers. Thank you, Your Honor. Thank you, Mr. Turek. The case will be taken under advisement.